Ex. 5, Heinritz Affidavit

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JOSHUA LOPP #654488,

  Plaintiff,      NO. 1:19-cv-540

v           HON. PAUL L. MALONEY

HEIDI WASHINGTON, THOMAS  MAG. PHILLIP J. GREEN
FINCO, NOAH NAGY, LAURA
HEINRITZ, STEVEN ADAMSON
and DAVID LEACH,

  Defendants.
_____/

## **AFFIDAVIT OF LAURA HEINRITZ**

  I, Laura Heinritz, being duly sworn, depose and say as follows:

  1. I am currently, and was at all times relevant to this lawsuit, employed by the Michigan Department of Corrections (MDOC) as the Classification Director; I work out of the MDOC Central Facilities Administration (CFA) in Lansing, Michigan.

  2. If sworn as a witness, I can testify competently to the facts contained within this affidavit.

  3. I have personally reviewed the Complaint filed by prisoner Joshua Lopp, #654488, filed on July 8, 2019.

  4. The MDOC Policy Directive (PD) 05.03.150 "Religious Beliefs and Practices of Prisoners" governs Lopp's requests for religious meals.  During the time-period relevant to the Complaint, three versions of this PD were in effect; I have included these three versions in reverse chronological order as Attachment A.

5.      Under PD 05.03.150 ¶ G, the CFA Special Activities Coordinator sits on the Chaplaincy Advisory Council, which serves in an advisory capacity to the MDOC regarding religious policy and programming.

6.      Under PD 05.03.150 ¶¶ K & L, prisoners who seek recognition of a religion must submit information via the warden to the Special Activities Coordinator; the Special Activities Coordinator, sometimes with the assistance of the Chaplaincy Advisory Council, would then make a recommendation to the MDOC Deputy Director, who makes the final decision whether to recognize that religion.

7.      Under PD 05.03.150 ¶ PP, a prisoner wishing to eat a religious meal must submit the request via the warden to the Special Activities Coordinator, who makes the decision regarding whether to grant or deny the request.

8.      As the Classification Director, I am the direct supervisor of the Special Activities Coordinator under the MDOC organization structure.  In the matters referenced in PD 05.03.150, however, I have no direct supervision or personal involvement in the decisions or recommendations made by the Special Activities Coordinator or the Chaplaincy Advisory Council.

9.      During the time period relevant to the Complaint, David Leach was the Special Activities Coordinator from 10/26/2014 to 10/31/2018, and Steve Adamson was the Special Activities Coordinator from 12/02/2018 to 01/08/2021.

10.     I do not know Lopp, and at no time did Leach or Adamson ever discuss Lopp's request for religious meal or Lopp's religion with me.

11.     The documents referenced in this affidavit are records of regularly conducted activity of the MDOC.  The records were made at or near the time of the occurrences reflected, by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters.  These documents are kept in the regular course of business of the MDOC.  Any copy of these records attached to or accompanying this affidavit are true and accurate copies of the original records.

AFFIANT SAYS NOTHING FURTHER.

"I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND ACCURATE."


*Laura Heinritz*
Laura Heinritz
Classification Director
Central Facilities Administration
MDOC

| MICHIGAN DEPARTMENT OF CORRECTIONS **POLICY DIRECTIVE** | EFFECTIVE DATE 10/01/2019 | NUMBER 05.03.150 |
|---|---|---|
| SUBJECT RELIGIOUS BELIEFS AND PRACTICES OF PRISONERS | SUPERSEDES 05.03.150 (10/15/2018) | |
| | AUTHORITY MCL 551.102, 551.103, 551.103a, 551.104, 551.107, 551.108, 551.7, 791.203, 791.204, 800.282 | |
| | PAGE 1 OF 9 | |

**POLICY STATEMENT:**

Prisoners shall be permitted to exercise their religious beliefs within the constraints necessary for the safety, security and good order of the facility.

**RELATED POLICIES:**

| 03.02.105 | Volunteer Services and Programs |
|---|---|
| 04.05.120 | Segregation Standards |
| 05.03.140 | Prisoner Visiting |

**POLICY:**

<u>GENERAL INFORMATION</u>

A.    For purposes of this policy, "prisoner" includes parolees in Department correctional facilities and probationers in the Special Alternative Incarceration Program (SAI).

B     Religious freedom is a constitutionally guaranteed right.  All recognized religions enjoy equal status and protection, subject to those limitations necessary to maintain the safety, good order and security of the facility, including the health and safety of prisoners and staff.

C.    No employee, agent of the Department, or other prisoner shall proselytize, nor permit others to proselytize, any prisoner without their consent.  No prisoner shall be discriminated against, or given preferential treatment, because of their religious beliefs or practices.

D.    Except in SAI, prisoners may maintain head and facial hair in accordance with their religious beliefs provided that reasonable hygiene is maintained and prisoner identification cards are kept current. Prisoners in SAI are required to maintain head and facial hair as set forth in PD 05.01.142 "Special Alternative Incarceration Program."

E.    Institutional Chaplains shall not be assigned duties that are primarily the responsibility of custodial staff. Religious volunteers also shall not be used to perform custodial or any other duties or duties that are the responsibility of staff.

F.    A prisoner may contribute funds to external religious organizations in accordance with PD 04.02.105 "Prisoner Funds."

<u>CHAPLAINCY ADVISORY COUNCIL</u>

G.    A Chaplaincy Advisory Council (CAC) comprised of representatives of various faiths and denominations, serves in an advisory capacity to the Department regarding religious policy and programming. The CFA Special Activities Coordinator shall be a member of the CAC and ensure that all major religions are represented.  Organization and membership of the CAC is governed by its constitution and bylaws.  The CAC constitution and bylaws shall not conflict with any Department policy or procedure and are subject to the approval of the Deputy Director.

H.    Upon request of the Deputy Director or designee, the CAC or its individual members may assist in evaluating religious programming and the screening and selection of institutional Chaplains.

Heinritz Affidavit - Attachment A - Page 1 of 27

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER |
|---|---|---|
| POLICY DIRECTIVE | 10/01/2019 | 05.03.150 |

PAGE **2** OF **9**

DEPARTMENT RECOGNIZED RELIGIOUS GROUPS

I.      The Department recognizes religious groups for the purpose of identifying those groups authorized to conduct group religious services and attend group religious activities and for identifying authorized personal religious property prisoners belonging to the religious group may possess, subject to PD 04.07.112 "Prisoner Personal Property" and PD 05.01.142 "Special Alternative Incarceration Program." Attachment A identifies those religious groups recognized by the Department that are authorized to conduct group religious services and attend group religious activities as well as all authorized personal religious property members of that religious group may possess. Attachment B identifies those religious groups recognized by the Department that are not authorized to conduct group religious services or attend group religious services but whose members are authorized to possess personal religious property. Prisoners are allowed to possess personal religious reading material of any religion as set forth in Paragraph II.

J.      The CFA Special Activities Coordinator shall maintain the Handbook of Religious Groups that sets forth general information on the beliefs, practices, and customs of each recognized religious group. The Handbook also shall identify religious holy days, including any fasts or feasts that prisoners shall be permitted to observe consistent with Department policy. This includes but is not limited to Ramadan fasts, Seders, and Eid-ul-Fitr and Eid-ul-Adha observances. The CFA Special Activities Coordinator shall ensure that the Handbook is available on the Department's Document Access System (DAS).

K.      A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden or designee. The request shall include information regarding the group's religious beliefs and practices. The Warden shall ensure all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. The CFA Special Activities Coordinator shall forward their recommendation, and that of the CAC if applicable, to the Deputy Director for a final determination.

L.      The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition, and if so, whether group religious services and activities and personal religious property will be allowed. The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC. The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security threat. The decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group. All Assistant Deputy Directors (ADD) and Wardens shall be advised of the final decision.

SOLICITATION/RECEIPT OF FUNDS

M.      Recognized religious groups, and prisoners acting on behalf of the group, may solicit and collect funds only as specifically authorized by this policy. Religious groups that are not recognized by the Department cannot solicit or collect funds from any source.

N.      Recognized religious groups and their members are prohibited from charging or receiving donations or anything else of value from any prisoner, including prisoners who are members of the group or who wish to attend group services or activities. Recognized religious groups are permitted to receive funds from the Prisoner Benefit Fund (PBF), in accordance with PD 04.02.110 "Prisoner Benefit Fund." Funds received from the PBF may be spent only as follows, subject to the Warden's approval:

1.      For special entertainment available to all general population prisoners in the facility (e.g., guest speaker, musical group).

2.      To sponsor competitive events available to all general population prisoners in the facility.

3.      To contribute to a charitable organization.

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>10/01/2019 | NUMBER<br>05.03.150 | |
|---|---|---|---|
| | | | PAGE 3 OF 9 |

4. To purchase items benefiting the religious group.

5. Other expenditures as approved by the Warden. However, under no circumstances shall funds be used to purchase personal property for prisoners or any computer equipment. Funds received by the religious group also shall not be used for banquets or similar special meals.

O. All funds collected by a recognized religious group shall be deposited directly into an institutional account created for the group. The account shall be created and maintained as a sub-account of the PBF. The institution's Administrative Officer shall ensure the proper handling of cash, sales records and receipts, and the reconciling and depositing of all funds. Funds remaining in the account of a religious group that has not had a member for at least one year shall be placed in the PBF and the account closed. The Department and its employees are not responsible for the unpaid bills of a recognized religious group.

RELIGIOUS SERVICES AND ACTIVITIES

P. A prisoner shall not be restricted from joining and attending the services and activities of a religious group on the basis of race, color, or nationality.

Q. Information on group religious services and activities available within an institution shall be made available to prisoners during orientation. Prisoners also shall be kept informed about opportunities to participate in offered religious services and activities on a continuing basis. This shall include posting a schedule of all offered religious services and activities in a location where it can be seen by prisoners. Prisoner attendance at group religious services and activities shall be scheduled by the Chaplain in conjunction with the appropriate Deputy Warden or designee. Except in SAI, attendance also shall be in accordance with PD 04.04.130 "Prisoner Movement within an Institution."

R. Each prisoner shall be allowed to identify their religious affiliation, but will not be recognized as belonging to, or allowed to participate in the services or activities of, more than one religious group at any given time. Prisoners may change their religious affiliation no more often than twice a year and must provide written notice of the change to the institutional Chaplain. The Declaration of Religious Preference form (CSJ-177) shall be used to identify and change religious affiliation. The form shall not be retained in any of the prisoner's commitment files, unless requested in writing by the prisoner. Except in SAI, the Warden shall ensure that the prisoner's religious affiliation as identified on the Declaration of Religious Preference form is entered on the Department's computerized database within five business days after receipt of the form by the Chaplain.

S. A Warden may prohibit a religious practice only if it is a threat to the safety, security, and good order of the facility. If a religious practice is prohibited, the Warden shall report it to the CFA Special Activities Coordinator within one business day.

T. Prisoners shall not serve as clergy or leaders of religious groups even if qualified to do so, except as set forth in Paragraph FF. Prisoners who hold religious credentials shall not have those credentials recognized within an institution.

U. Special provisions for the observance of religious holidays or holy days shall be permitted only as authorized and specifically provided for by Department policy.

GROUP SERVICES/ACTIVITIES

V. Group religious services shall be offered at all institutions for prisoners belonging to a recognized religious group. Except as set forth in Attachment A, each group shall be allowed a weekly religious service if resources permit. However, a service is not required to be conducted if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group. If resources such as time or space are limited, the following shall be followed in allotting available resources:

1. Each major faith group within the same custody level of an institution may be required to hold joint services (e.g., there may be one non-sectarian service for Christian prisoners, one for Islamic prisoners, one for Jewish prisoners, and one for Native American prisoners).

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/01/2019 | 05.03.150 | PAGE 4 OF 9 |

2. The Warden or designee may establish a maximum number of hours that will be available per week or month for group religious services and activities and divide those hours among recognized religious groups at their institution. While preference may be given to those recognized religious groups with the larger numbers, all recognized religious groups shall be allowed at least some opportunity for group services.

W. There shall be at least one suitable area designated for conducting group religious services and activities within each institution. Staff shall have access to any area where group religious services or activities are being conducted. However, staff shall be as respectful of religious practices as possible, consistent with necessary custody and security controls. These areas shall be subject to search, which shall be conducted in the presence of the Chaplain, if possible. However, searches shall not be delayed if a Chaplain is not readily available. Care should be taken so that items which have been consecrated or are considered sacred are treated with respect and appropriate care.

X. A prisoner shall not possess or have control over candles, candle holders, lighters, or any incendiary device used during group religious services or activities. These items must remain under control of staff or volunteer clergy at all times while in use. In addition, there must be in-room staff supervision of group religious services or activities whenever a candle is used.

Y. In Level IV and V, group religious services and activities shall have continuous in-room staff supervision at all times. Subject to Paragraph X, group religious services and activities in Level I and Level II shall have at least random in-room staff supervision. However, every effort shall be made to have continuous in-room staff supervision when a religious service is being led by a prisoner assistant pursuant to Paragraph FF. In all other cases, the Warden shall determine the need for in-room staff supervision for group services and activities. However, staff must be readily available in the area when in-room staff supervision is not required. Staff providing in-room supervision shall remain in the room where the service or activity is being conducted during the entire service or activity. To ensure that prisoners are engaging only in conduct appropriate to the practice of the religion, staff providing in-room supervision shall listen to and watch those attending the service or activity. This supervision shall be as unobtrusive as possible, consistent with custody and security controls.

Z. When attending group religious services or activities, prisoners shall engage only in conduct appropriate to the practice of the religion. Prisoners shall not guard or control, or position themselves so as to appear to be guarding or controlling, the entrance to or exit from the religious service or activity. Militaristic type behavior (e.g., saluting each other; marching) shall not be permitted. Failure to comply with these requirements may result in the prisoner being required to leave the area or result in termination of the service or activity.

AA. Prisoners may be released from work or school assignments to attend group religious services and approved holy day observances. However, prisoners shall not be released to attend other religious activities. A prisoner must submit a written request to the Warden or designee to be released from their work or school assignment at least 15 calendar days prior to the service or holy day observance. Prisoners released from a work or school assignment to attend group religious services or holy day observances will not be paid for their absence from the assignment. Prisoners shall not return to the assignment at the conclusion of the group religious service or holy day observance unless specifically requested to do so by the work or school supervisor.

BB. Religious services and activities should be scheduled when the majority of prisoners have leisure time (e.g., evening and weekend hours). If resources permit, additional services and activities may be scheduled to accommodate those prisoners who are normally on a work or school assignment when other prisoners have leisure time. Chaplains shall be available at the facility when the majority of services and activities are scheduled.

CC. The Warden or designee may reschedule any group religious service or activity at their facility or restrict the size of the group attending religious services or activities, for custody and security reasons.

DD. Group religious services and activities shall be offered only for religious groups recognized by the Department. Prisoners shall be permitted to attend only the group religious services and activities offered for the religion they have designated in writing as their religious affiliation. Group religious

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>10/01/2019 | NUMBER<br>05.03.150 | |
|---|---|---|---|
| | | | PAGE **5** OF **9** |

services and activities for prisoners in segregation shall be offered only as set forth in PD 04.05.120 "Segregation Standards."

EE.     The Warden may suspend religious group services and activities if holding the service or activity would constitute a threat to the safety, security and good order of the institution.   If a Warden suspends group religious services or activities, it shall be reported through the appropriate chain of command to the CFA Special Activities Coordinator.   Group religious services and activities may not be suspended for more than one week without authorization from the appropriate ADD and notification to the CFA Special Activities Coordinator.

FF.     The institutional Chaplain may approve a prisoner to temporarily assist in leading a group religious service only if the Chaplain is not theologically qualified or permitted to lead the service under religious guidelines and there are no qualified outside volunteers nearby who are available to lead the service. In such cases, in-room staff supervision shall be provided as set forth in Paragraph Y.   Prisoners acting as temporary assistants to the Chaplain shall not be recognized by courtesy titles (e.g., Minister, Priest, Reverend, Imam, Padre, Father, Sister, Brother, Grand Sheik) in the institution.   They also shall not represent themselves to members of the public, staff or other prisoners with such titles.

GG.     Except in SAI, institutional Chaplains shall maintain records of attendance at group religious services but shall not include those records in any of the prisoner's commitment files.

RELIGIOUS MATERIALS

HH.     Prisoners are allowed to receive religious reading material through the mail and from the institutional Chaplain, subject to PD 04.07.112 "Prisoner Personal Property", PD 05.03.118 "Prisoner Mail," and PD 05.01.142 "Special Alternative Incarceration Program." This includes reading materials about a religious group not granted recognition by the Department.   Institutional Chaplains shall ensure that religious reading material from a variety of religious groups is available for prisoner use.

II.     In addition to religious reading material, prisoners are allowed to possess personal religious property that is necessary to the practice of the prisoner's religion unless an item presents a threat to the safety, security, and good order of the facility, as determined by the Deputy Director and subject to PD 04.07.112 "Prisoner Personal Property" and PD 05.01.142 "Special Alternative Incarceration Program."   Attachment A and B identifies personal religious property authorized by the Deputy Director for prisoners who are members of a religious group recognized by the Department.   Only religious property identified on the attachments shall be permitted.   The attachments also identify restrictions on the possession and use of such property.

JJ.     Subject to PD 05.01.142 "Special Alternative Incarceration Program," all prisoners may possess personal religious property that has not already been authorized by the Deputy Director only with approval of the Deputy Director.   Such requests from prisoners must be submitted in writing to the Warden or designee and include a description of the religious item along with an explanation of its significance to the prisoner's designated religion.   The Warden or designee shall forward the request and any supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command.   The CFA Special Activities Coordinator shall present the material to the CAC for review as needed prior to submission to the Deputy Director.

KK.     The Deputy Director shall make the final decision as to whether the religious item will be approved based on whether it is necessary to the practice of the prisoner's religion and whether possession of the item would pose a threat to the custody and security of the facility.   The decision whether the item is necessary to the practice of the prisoner's designated religion shall be based on any recommendation received from the CAC.   The Warden or designee shall be advised of the final decision and shall notify the prisoner.

LL.     If a prisoner changes their designated religion, any religious items other than reading material in their possession that are not necessary to the practice of the prisoner's newly designated religion shall be considered contraband. Contraband shall be disposed of as set forth in PD 04.07.112 "Prisoner Personal Property."

MM.     The CFA Special Activities Coordinator shall authorize vendors from which prisoners may purchase

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/01/2019 | 05.03.150 | PAGE 6 OF 9 |

religious reading material and other approved religious materials for each religious group recognized by the Department. Prisoners may purchase approved personal religious property other than reading material only through the institution from authorized vendors in accordance with PD 04.07.112 "Prisoner Personal Property." Religious reading material may be purchased as set forth in PD 05.03.118 "Prisoner Mail." Religious property, including reading material, is subject to the retail value limit set forth in PD 04.07.112 "Prisoner Personal Property."

RELIGIOUS MENUS/MEALS

NN.    The regular diet menu shall be posted a minimum of one week in advance in all facilities at which meals are provided to prisoners to permit observance of any religious dietary restrictions. Prisoners shall be permitted to abstain from any foods that violate their religious tenets. Non-meat entrees shall be available as set forth in PD 04.07.100 "Offender Meals."

OO.    The Department offers a vegan menu to meet the religious dietary needs of prisoners at the following facilities: Alger Correctional Facility, Baraga Correctional Facility, Carson City Correctional Facility, Central Michigan Correctional Facility, Chippewa Correctional Facility, Earnest C. Brooks Correctional Facility, Ionia Correctional Facility, Kinross Correctional Facility, Lakeland Correctional Facility, Macomb Correctional Facility, Muskegon Correctional Facility, Newberry Correctional Facility, Oaks Correctional Facility, Parnall Correctional Facility, St. Louis Correctional Facility, Women's Huron Valley Correctional Facility. The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet their religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals." The Deputy Director or designee shall determine at which facilities religious meals will be offered.

PP.    A prisoner may eat from a Vegan menu only with approval of the CFA Special Activities Coordinator. Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion, including the prisoner's sincerely held religious beliefs. To request approval, the prisoner must submit a written request to the Warden or designee, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden or designee of the decision. The Warden shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

QQ.    A prisoner approved to eat from a religious menu shall be provided appropriate meals within a reasonable time after the approval. The prisoner shall be transferred to an institution offering the meals, if necessary. Once the meals are provided, the prisoner shall not be allowed to eat from the regular menu. The prisoner shall continue to be provided meals from the religious menu except as set forth in Paragraphs RR and SS.

RR.    A prisoner approved to eat from a religious menu must notify the Warden in writing if they no longer want to eat from that menu. The approval shall be rescinded upon receipt of the request.

SS.    A prisoner approved to eat meals prepared from the religious menu who is found at an administrative hearing conducted pursuant to Administrative Rule 791.3310 to have either possessed or consumed food that violates a tenet of their designated religion shall be referred to the institutional Chaplain to discuss the matter and be counseled on how to conform their conduct to religious dietary requirements. The Chaplain shall document the counseling in writing. If, subsequent to this counseling, the prisoner is found at an administrative hearing to have again possessed or consumed food that violates a tenet of their designated religion, the prisoner's approval to eat meals prepared from the Vegan menu shall be rescinded. The prisoner may apply for reinstatement to eat from the Vegan menu no sooner than 60 calendar days after the approval is rescinded the first time and no sooner than one year after approval is rescinded a second time. A prisoner who has approval rescinded three or more times must appeal to the CFA Deputy Director for reinstatement to eat from the Vegan menu.

TT.    An annual Passover Seder shall only be conducted at the Parnall Correctional Facility (SMT) and the Women's Huron Valley Correctional Facility (WHV) under the direction of the CFA Special Activities

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/01/2019 | 05.03.150 | PAGE **7** OF **9** |

Coordinator. Only prisoners who designated Judaism as their religious affiliation shall be permitted to attend the Seder. The Warden shall determine necessary custody supervision, consistent with requirements set forth in this policy.

UU. Muslim prisoners need not participate in Ramadan to participate in EID observances.

VV. The following steps shall be completed when any outside group wants to donate food for religious observances:

1. The group submits a written request to the Warden within 30 calendar days of the religious observance.

2. The group identifies the food, quantity, and the specific observance for which the food is being donated. Prisoner store food items are not permitted for prisoner religious observances.

3. If the Warden approves the request, they forward the request to the CFA Special Activities Coordinator.

4. The CFA Special Activities Coordinator approves or denies the request and notifies the Warden. If approved, the food shall go through custody and security protocol before it is allowed into the facility.

Note: The MDOC will not cook or store any donated food. Food for religious observances is meant to be symbolic and not a regular meal or multi-course feeding. Excess food at the end of the service shall be discarded by MDOC staff or removed from the facility by the group that donated the food.

WW. Except in SAI, prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the CFA Special Activities Coordinator and set forth in the Handbook of Religious Groups. A prisoner or group of prisoners who wants to observe a religious fast or feast that has not already been approved by the CFA Special Activities Coordinator must submit a written request to do so to the Warden or designee that shall include information regarding the religion's beliefs and practices. The Warden or designee shall refer the request and supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command for approval. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. Approval shall be granted only if the fast or feast is necessary to the practice of a bona fide religion and observance of the fast or feast would not pose a threat to the order and security of the facility. The CFA Special Activities Coordinator shall ensure ADDs and Wardens are notified of newly approved religious fasts or feasts.

XX. Special religious meals and food items shall be provided to prisoners only as set forth in this section. This does not apply to food items that may be sold in the prisoner store pursuant to PD 04.02.130 "Prisoner Store" or provided to prisoners as religious sacraments.

<u>CLERGY AND RELIGIOUS VOLUNTEERS</u>

YY. All prisoners shall have access to members of the clergy as set forth in this policy, including clergy for a religious group that has not been granted recognition by the Department. For purposes of this policy, "clergy" is defined as a leader of a religious organization or entity such as a church, mosque or synagogue, or a person who has been granted clergy status by a recognized religion. It does not include anyone who is self-ordained or designated as clergy by a prisoner.

ZZ. Clergy shall be permitted to respond to the religious and spiritual needs of a prisoner who requests assistance, consistent with Department policies and procedures. Clergy may keep pastoral confidences intact except when withheld information would endanger the safety, security and good order of the facility or the community, including the health and safety of members of the public, staff, or prisoners.

AAA. Prisoners shall be allowed visits from clergy and outreach volunteers as set forth in PD 05.03.140 "Prisoner Visiting." However, SAI prisoners shall be allowed visits only as set forth in PD 05.01.142 "Special Alternative Incarceration Program." Clergy may bring into the visiting room or area a copy of their religious writings (e.g., Bible, Qur'an, Koran, Rabbi's Manual, Prayer Book, and Service Book) for

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/01/2019 | 05.03.150 | PAGE 8 OF 9 |

their use during the visit. The religious writings shall be subject to search.

BBB. The Warden may permit a qualified religious volunteer to conduct group religious services and activities for religious groups recognized by the Department. Clergy (e.g., Priest, Rabbi, Imam, Reverend) serving as religious volunteers are required to have an endorsement from their religious authority and be approved to provide volunteer services pursuant to PD 03.02.105 "Volunteer Services and Programs." Religious volunteers are subject to the same restrictions on contact with individual prisoners as other volunteers, except that religious volunteers who are members of the clergy may visit, correspond, or otherwise communicate with individual prisoners for religious counseling if approved by the Warden.

CCC. Clergy may bring up to two ounces of wine into a facility for their liturgical use. Prisoners are not allowed to consume this wine.

DDD. Liturgical apparel may be worn by clergy during religious services and activities and stored at the facility in conformance with procedures for maintaining order, security and safety as directed by the Warden.

EEE. With the exception of the Detroit Reentry Center (DRC), prisoners shall have access to an Institutional Chaplain. Institutional Chaplains shall be duly credentialed or ordained by a recognized religious group. The Chaplain shall have access to all areas of the institution necessary to perform their pastoral responsibilities. The Chaplain shall function as coordinator of the institution's religious program and be available to respond to the religious and spiritual needs of any prisoner who requests assistance, regardless of their religious affiliation. Chaplains shall visit segregation units at least weekly to be available to prisoners in those units who want to meet with them. Chaplains also shall be available to meet with segregation prisoners upon request of segregation unit staff.

FFF. Chaplains shall develop and maintain relationships with religious resources in the community. With the approval of the Warden, they also may minister to employees during times of personal crises.

GGG. In larger institutions and in areas where several institutions are located in close proximity to each other, the Department shall attempt to fill Chaplaincy vacancies so that as many faiths as possible are represented on the Chaplaincy staff. The CFA Special Activities Coordinator or designee shall serve on interview panels to fill such vacancies.

PRISONER MARRIAGES

HHH. Prisoners have the right to marry in accordance with State law. No expenses shall accrue to the State for any prisoner marriage beyond that which is necessary to comply with this policy.

III. Prisoners may make their own arrangements with clergy or an outside person authorized to perform marriages pursuant to State law. Institutional Chaplains shall be available to either perform prisoner marriages or assist the prisoner in making their own arrangements unless the prisoner is in SAI.

JJJ. Marriage ceremonies are subject to reasonable time and place limitations as determined by the Warden. Ceremonies for prisoners in Level V or in any form of segregation shall not exceed ten minutes in length. The ceremony also shall be limited to ten minutes in length if either of the marrying parties is subject to any form of visitor restriction imposed pursuant to PD 05.03.140 "Prisoner Visiting."

KKK. The Warden may limit attendance at a marriage ceremony conducted within a correctional facility for legitimate custody and security reasons, including limited resources. Except for the marrying parties, no one may attend the ceremony who is the subject of a visitor restriction pursuant to PD 05.03.140 "Prisoner Visiting." The spouse, approved witnesses, and approved wedding party members shall be permitted to have appropriate physical contact during the ceremony with the prisoner being married, even if the prisoner is subject to a visitor restriction or is housed in a security level where only non-contact visits are permitted. No special visiting privileges shall be granted before or after the ceremony.

PROCEDURES

LLL. If necessary, to implement requirements set forth in this policy directive, Wardens shall ensure that

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>10/01/2019 | NUMBER<br>05.03.150 | PAGE  9  OF  9 |
| --- | --- | --- | --- |

operating procedures are developed or updated.

AUDIT ELEMENTS

MMM.   A Primary Audit Elements List has been developed and is available on the Department's Document Access System (DAS) to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

ATTACHMENTS

NNN.   This policy includes the following attachments:

1.   Attachment A - Recognized Religious Groups Authorized to Conduct Group Religious Services/Activities

2.   Attachment B - Recognized Religious Groups Not Authorized to Conduct Group Religious Services/Activities

APPROVED: HEW 08/27/2019

| MICHIGAN DEPARTMENT OF CORRECTIONS<br># POLICY DIRECTIVE | EFFECTIVE DATE<br>10/15/2018 | NUMBER<br>05.03.150 |
|---|---|---|
| SUBJECT<br>RELIGIOUS BELIEFS AND PRACTICES OF PRISONERS | SUPERSEDES<br>05.03.150 (09/15/2015) | |
| | AUTHORITY<br>MCL 551.102, 551.103, 551.103a, 551.104,<br>551.107, 551.108, 551.7, 791.203, 791.204,<br>800.282 | |
| | PAGE   1   OF   9 | |

**POLICY STATEMENT:**

Prisoners shall be permitted to exercise their religious beliefs within the constraints necessary for the safety, security and good order of the facility.

**RELATED POLICIES:**

| 03.02.105 | Volunteer Services and Programs |
|---|---|
| 04.05.120 | Segregation Standards |
| 05.03.140 | Prisoner Visiting |

**POLICY:**

<u>GENERAL INFORMATION</u>

A.    For purposes of this policy, "prisoner" includes parolees in Department correctional facilities and probationers in the Special Alternative Incarceration Program (SAI).

B     Religious freedom is a constitutionally guaranteed right.  All recognized religions enjoy equal status and protection, subject to those limitations necessary to maintain the safety, good order and security of the facility, including the health and safety of prisoners and staff.

C.    No employee, agent of the Department, or other prisoner shall proselytize, nor permit others to proselytize, any prisoner without his/her consent.   No prisoner shall be discriminated against, or given preferential treatment, because of his/her religious beliefs or practices.

D.    Except in SAI, prisoners may maintain head and facial hair in accordance with their religious beliefs provided that reasonable hygiene is maintained and prisoner identification cards are kept current. Prisoners in SAI are required to maintain head and facial hair as set forth in PD 05.01.142"Special Alternative Incarceration Program."

E.    Institutional Chaplains shall not be assigned duties that are primarily the responsibility of custodial staff. Religious volunteers also shall not be used to perform custodial or any other duties or duties that are the responsibility of staff.

F.    A prisoner may contribute funds to external religious organizations in accordance with PD 04.02.105 "Prisoner Funds."

<u>CHAPLAINCY ADVISORY COUNCIL</u>

G.    A Chaplaincy Advisory Council (CAC) comprised of representatives of various faiths and denominations, serves in an advisory capacity to the Department regarding religious policy and programming. The CFA Special Activities Coordinator shall be a member of the CAC and ensure that all major religions are represented.   Organization and membership of the CAC is governed by its constitution and bylaws.  The CAC constitution and bylaws shall not conflict with any Department policy or procedure and are subject to the approval of the Deputy Director.

H.    Upon request of the Deputy Director or designee, the CAC or its individual members may assist in evaluating religious programming and the screening and selection of institutional Chaplains.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/15/2018 | 05.03.150 | PAGE  2  OF  9 |

## DEPARTMENT RECOGNIZED RELIGIOUS GROUPS

I.    The Department recognizes religious groups for the purpose of identifying those groups authorized to conduct group religious services and attend group religious activities and for identifying authorized personal religious property prisoners belonging to the religious group may possess, subject to PD 04.07.112 "Prisoner Personal Property" and PD 05.01.142 "Special Alternative Incarceration Program." Attachment A identifies those religious groups recognized by the Department that are authorized to conduct group religious services and attend group religious activities as well as all authorized personal religious property members of that religious group may possess.   Attachment B identifies those religious groups recognized by the Department that are not authorized to conduct group religious services or attend group religious services but whose members are authorized to possess personal religious property. Prisoners are allowed to possess personal religious reading material of any religion as set forth in Paragraph II.

J.    The CFA Special Activities Coordinator shall maintain the Handbook of Religious Groups, which sets forth general information on the beliefs, practices, and customs of each recognized religious group. The Handbook also shall identify religious holy days, including any fasts or feasts that prisoners shall be permitted to observe consistent with Department policy.   This includes but is not limited to Ramadan fasts, Seders, and Eid-ul-Fitr and Eid-ul-Adha observances.   The CFA Special Activities Coordinator shall ensure that the Handbook is available on the Department's Document Access System (DAS).

K.    A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden or designee. The request shall include information regarding the group's religious beliefs and practices. The Warden shall ensure all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command.   The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed.   The CFA Special Activities Coordinator shall forward his/her recommendation, and that of the CAC if applicable, to the Deputy Director for a final determination.

L.    The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition, and if so, whether group religious services and activities and personal religious property will be allowed.   The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC.   The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security threat. The decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group.   All Assistant Deputy Directors (ADD) and Wardens shall be advised of the final decision.

## SOLICITATION/RECEIPT OF FUNDS

M.    Recognized religious groups, and prisoners acting on behalf of the group, may solicit and collect funds only as specifically authorized by this policy.   Religious groups that are not recognized by the Department cannot solicit or collect funds from any source.

N.    Recognized religious groups and their members are prohibited from charging or receiving donations or anything else of value from any prisoner, including prisoners who are members of the group or who wish to attend group services or activities.   Recognized religious groups are permitted to receive funds from the Prisoner Benefit Fund (PBF), in accordance with PD 04.02.110 "Prisoner Benefit Fund." Funds received from the PBF may be spent only as follows, subject to the Warden's approval:

1.    For special entertainment available to all general population prisoners in the facility (e.g., guest speaker, musical group).

2.    To sponsor competitive events available to all general population prisoners in the facility.

| DOCUMENT TYPE POLICY DIRECTIVE | EFFECTIVE DATE 10/15/2018 | NUMBER 05.03.150 | PAGE 3 OF 9 |
|---|---|---|---|

3.     To contribute to a charitable organization.

4.     To purchase items benefiting the religious group.

5.     Other expenditures as approved by the Warden. However, under no circumstances shall funds be used to purchase personal property for prisoners or any computer equipment.  Funds received by the religious group also shall not be used for banquets or similar special meals.

O.     All funds collected by a recognized religious group shall be deposited directly into an institutional account created for the group.  The account shall be created and maintained as a sub-account of the PBF.  The institution's Administrative Officer shall ensure the proper handling of cash, sales records and receipts, and the reconciling and depositing of all funds.  Funds remaining in the account of a religious group which has not had a member for at least one year shall be placed in the PBF and the account closed.  The Department and its employees are not responsible for the unpaid bills of a recognized religious group.

RELIGIOUS SERVICES AND ACTIVITIES

P.     A prisoner shall not be restricted from joining and attending the services and activities of a religious group on the basis of race, color, or nationality.

Q.     Information on group religious services and activities available within an institution shall be made available to prisoners during orientation.  Prisoners also shall be kept informed about opportunities to participate in offered religious services and activities on a continuing basis.  This shall include posting a schedule of all offered religious services and activities in a location where it can be seen by prisoners. .  Prisoner attendance at group religious services and activities shall be scheduled by the Chaplain in conjunction with the appropriate Deputy Warden or designee.  Except in SAI, attendance also shall be in accordance with PD 04.04.130 "Prisoner Movement within an Institution."

R.     Each prisoner shall be allowed to identify his/her religious affiliation, but will not be recognized as belonging to, or allowed to participate in the services or activities of, more than one religious group at any given time.  Prisoners may change their religious affiliation no more often than twice a year and must provide written notice of the change to the institutional Chaplain. The Declaration of Religious Preference form (CSJ-177) shall be used to identify and change religious affiliation.   The form shall not be retained in any of the prisoner's commitment files, unless requested in writing by the prisoner. Except in SAI, the Warden shall ensure that the prisoner's religious affiliation as identified on the Declaration of Religious Preference form is entered on the Department's computerized database within five business days after receipt of the form by the Chaplain.

S.     A Warden may prohibit a religious practice only if it is a threat to the safety, security, and good order of the facility.   If a religious practice is prohibited, the Warden shall report it to the CFA Special Activities Coordinator within one business day.

T.     Prisoners shall not serve as clergy or leaders of religious groups even if qualified to do so, except as set forth in Paragraph FF.  Prisoners who hold religious credentials shall not have those credentials recognized within an institution.

U.     Special provisions for the observance of religious holidays or holy days shall be permitted only as authorized and specifically provided for by Department policy.

GROUP SERVICES/ACTIVITIES

V.     Group religious services shall be offered at all institutions for prisoners belonging to a recognized religious group.  Except as set forth in Attachment A, each group shall be allowed a weekly religious service if resources permit.  However, a service is not required to be conducted if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group.   If resources such as time or space are limited, the following shall be followed in allotting available resources:

1.     Each major faith group within the same custody level of an institution may be required to hold joint services (e.g., there may be one non-sectarian service for Christian prisoners, one for

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/15/2018 | 05.03.150 | PAGE  4  OF  9 |

Islamic prisoners, one for Jewish prisoners, and one for Native American prisoners).

2.    The Warden or designee may establish a maximum number of hours which will be available per week or month for group religious services and activities and divide those hours among recognized religious groups at his/her institution.  While preference may be given to those recognized religious groups with the larger numbers, all recognized religious groups shall be allowed at least some opportunity for group services.

W.    There shall be at least one suitable area designated for conducting group religious services and activities within each institution.  Staff shall have access to any area where group religious services or activities are being conducted.  However, staff shall be as respectful of religious practices as possible, consistent with necessary custody and security controls.  These areas shall be subject to search, which shall be conducted in the presence of the Chaplain, if possible.  However, searches shall not be delayed if a Chaplain is not readily available.  Care should be taken so that items which have been consecrated or are considered sacred are treated with respect and appropriate care.

X.    A prisoner shall not possess or have control over candles, candle holders, lighters, or any incendiary device used during group religious services or activities. These items must remain under control of staff or volunteer clergy at all times while in use.  In addition, there must be in-room staff supervision of group religious services or activities whenever a candle is used.

Y.    In Level IV and V, group religious services and activities shall have continuous in-room staff supervision at all times.   Subject to Paragraph X, group religious services and activities in Level I and Level II shall have at least random in-room staff supervision.  However, every effort shall be made to have continuous in-room staff supervision when a religious service is being led by a prisoner assistant pursuant to Paragraph FF.  In all other cases, the Warden shall determine the need for in-room staff supervision for group services and activities.  However, staff must be readily available in the area when in-room staff supervision is not required.  Staff providing in-room supervision shall remain in the room where the service or activity is being conducted during the entire service or activity.  To ensure that prisoners are engaging only in conduct appropriate to the practice of the religion, staff providing in-room supervision shall listen to and watch those attending the service or activity.  This supervision shall be as unobtrusive as possible, consistent with custody and security controls.

Z.    When attending group religious services or activities, prisoners shall engage only in conduct appropriate to the practice of the religion.  Prisoners shall not guard or control, or position themselves so as to appear to be guarding or controlling, the entrance to or exit from the religious service or activity. Militaristic type behavior (e.g., saluting each other; marching) shall not be permitted.  Failure to comply with these requirements may result in the prisoner being required to leave the area or result in termination of the service or activity.

AA.    Prisoners may be released from work or school assignments to attend group religious services and approved holy day observances. However, prisoners shall not be released to attend other religious activities. A prisoner must submit a written request to the Warden or designee to be released from his/her work or school assignment at least 15 calendar days prior to the service or holy day observance.  Prisoners released from a work or school assignment to attend group religious services or holy day observances will not be paid for their absence from the assignment.  Prisoners shall not return to the assignment at the conclusion of the group religious service or holy day observance unless specifically requested to do so by the work or school supervisor.

BB.    Religious services and activities should be scheduled when the majority of prisoners have leisure time (e.g., evening and weekend hours). If resources permit, additional services and activities may be scheduled to accommodate those prisoners who are normally on a work or school assignment when other prisoners have leisure time. Chaplains shall be available at the facility when the majority of services and activities are scheduled.

CC.    The Warden or designee may reschedule any group religious service or activity at his/her facility or restrict the size of the group attending religious services or activities, for custody and security reasons.

DD.    Group religious services and activities shall be offered only for religious groups recognized by the Department. Prisoners shall be permitted to attend only the group religious services and activities

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/15/2018 | 05.03.150 | PAGE 5 OF 9 |

offered for the religion s/he has designated in writing as his/her religious affiliation. Group religious services and activities for prisoners in segregation shall be offered only as set forth in PD 04.05.120 "Segregation Standards."

EE.    The Warden may suspend religious group services and activities if holding the service or activity would constitute a threat to the safety, security and good order of the institution.   If a Warden suspends group religious services or activities, it shall be reported through the appropriate chain of command to the CFA Special Activities Coordinator.   Group religious services and activities may not be suspended for more than one week without authorization from the appropriate ADD and notification to the CFA Special Activities Coordinator.

FF.    The institutional Chaplain may approve a prisoner to temporarily assist in leading a group religious service only if the Chaplain is not theologically qualified or permitted to lead the service under religious guidelines and there are no qualified outside volunteers nearby who are available to lead the service. In such cases, in-room staff supervision shall be provided as set forth in Paragraph Y.   Prisoners acting as temporary assistants to the Chaplain shall not be recognized by courtesy titles (e.g., Minister, Priest, Reverend, Imam, Padre, Father, Sister, Brother, Grand Sheik) in the institution.   They also shall not represent themselves to members of the public, staff or other prisoners with such titles.

GG.    Except in SAI, institutional Chaplains shall maintain records of attendance at group religious services but shall not include those records in any of the prisoner's commitment files.

RELIGIOUS MATERIALS

HH.    Prisoners are allowed to receive religious reading material through the mail and from the institutional Chaplain, subject to PD 04.07.112 "Prisoner Personal Property," PD 05.03.118 "Prisoner Mail," and PD 05.01.142 "Special Alternative Incarceration Program." This includes reading materials about a religious group not granted recognition by the Department.   Institutional Chaplains shall ensure that religious reading material from a variety of religious groups is available for prisoner use.

II.    In addition to religious reading material, prisoners are allowed to possess personal religious property which is necessary to the practice of the prisoner's religion unless an item presents a threat to the safety, security, and good order of the facility, as determined by the Deputy Director and subject to PD 04.07.112 "Prisoner Personal Property" and PD 05.01.142 "Special Alternative Incarceration Program."   Attachment A and B identifies personal religious property authorized by the Deputy Director for prisoners who are members of a religious group recognized by the Department.   Only religious property identified on the attachments shall be permitted.   The attachments also identify restrictions on the possession and use of such property.

JJ.    Subject to PD 05.01.142 "Special Alternative Incarceration Program," all prisoners may possess personal religious property that has not already been authorized by the Deputy Director only with approval of the Deputy Director.   Such requests from prisoners must be submitted in writing to the Warden or designee and include a description of the religious item along with an explanation of its significance to the prisoner's designated religion.   The Warden or designee shall forward the request and any supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command.   The CFA Special Activities Coordinator shall present the material to the CAC for review as needed prior to submission to the Deputy Director.

KK.    The Deputy Director shall make the final decision as to whether the religious item will be approved based on whether it is necessary to the practice of the prisoner's religion and whether possession of the item would pose a threat to the custody and security of the facility.   The decision whether the item is necessary to the practice of the prisoner's designated religion shall be based on any recommendation received from the CAC.   The Warden or designee shall be advised of the final decision and shall notify the prisoner.

LL.    If a prisoner changes his/her designated religion, any religious items other than reading material in his/her possession which are not necessary to the practice of the prisoner's newly designated religion shall be considered contraband. Contraband shall be disposed of as set forth in PD 04.07.112 "Prisoner Personal Property."

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/15/2018 | 05.03.150 | PAGE 6 OF 9 |

MM.  The CFA Special Activities Coordinator shall authorize vendors from which prisoners may purchase religious reading material and other approved religious materials for each religious group recognized by the Department.  Prisoners may purchase approved personal religious property other than reading material only through the institution from authorized vendors in accordance with PD 04.07.112 "Prisoner Personal Property."  Religious reading material may be purchased as set forth in PD 05.03.118 "Prisoner Mail."  Religious property, including reading material, is subject to the retail value limit set forth in PD 04.07.112 "Prisoner Personal Property."

RELIGIOUS MENUS/MEALS

NN.  The regular diet menu shall be posted a minimum of one week in advance in all facilities at which meals are provided to prisoners to permit observance of any religious dietary restrictions.  Prisoners shall be permitted to abstain from any foods that violate their religious tenets.  Non-meat entrees shall be available as set forth in PD 04.07.100 "Offender Meals."

OO.  The Department offers a vegan menu to meet the religious dietary needs of prisoners at the following facilities: Alger Correctional Facility, Baraga Correctional Facility, Carson City Correctional Facility, Central Michigan Correctional Facility, Chippewa Correctional Facility, Earnest C. Brooks Correctional Facility, Ionia Correctional Facility, Kinross Correctional Facility, Lakeland Correctional Facility, Macomb Correctional Facility, Muskegon Correctional Facility, Newberry Correctional Facility, Oaks Correctional Facility, Parnall Correctional Facility, St. Louis Correctional Facility, Women's Huron Valley Correctional Facility.  The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner.  All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals."  The Deputy Director or designee shall determine at which facilities religious meals will be offered.

PP.  A prisoner may eat from a Vegan menu only with approval of the CFA Special Activities Coordinator.  Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion, including the prisoner's sincerely held religious beliefs.  To request approval, the prisoner must submit a written request to the Warden or designee, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator.  The CFA Special Activities Coordinator shall notify the Warden or designee of the decision.  The Warden shall ensure that the prisoner is notified.  A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

QQ.  A prisoner approved to eat from a religious menu shall be provided appropriate meals within a reasonable time after the approval. The prisoner shall be transferred to an institution offering the meals, if necessary. Once the meals are provided, the prisoner shall not be allowed to eat from the regular menu.   The prisoner shall continue to be provided meals from the religious menu except as set forth in Paragraphs RR and SS.

RR.  A prisoner approved to eat from a religious menu must notify the Warden in writing if s/he no longer wants to eat from that menu.   The approval shall be rescinded upon receipt of the request.

SS.  A prisoner approved to eat meals prepared from the religious menu who is found at an administrative hearing conducted pursuant to Administrative Rule 791.3310 to have either possessed or consumed food that violates a tenet of his/her designated religion shall be referred to the institutional Chaplain to discuss the matter and be counseled on how to conform his/her conduct to religious dietary requirements. The Chaplain shall document the counseling in writing.  If, subsequent to this counseling, the prisoner is found at an administrative hearing to have again possessed or consumed food that violates a tenet of his/her designated religion, the prisoner's approval to eat meals prepared from the Vegan menu shall be rescinded.  The prisoner may apply for reinstatement to eat from the Vegan menu no sooner than 60 calendar days after the approval is rescinded the first time and no sooner than one year after approval is rescinded a second time.  A prisoner who has approval rescinded three or more times must appeal to the CFA Deputy Director for reinstatement to eat from the Vegan menu.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/15/2018 | 05.03.150 | PAGE 7 OF 9 |

TT.  Pursuant to court order, an annual Passover Seder shall only be conducted at the Parnall Correctional Facility (SMT) under the direction of the CFA Special Activities Coordinator. Only prisoners who designated Judaism as their religious affiliation shall be permitted to attend the Seder. The Warden shall determine necessary custody supervision, consistent with requirements set forth in this policy.

UU.  Muslim prisoners need not participate in Ramadan to participate in EID observances.

VV.  The following steps shall be completed when any outside group wants to donate food for religious observances:

1.  The group submits a written request to the Warden within 30 calendar days of the religious observance.

2.  The group identifies the food, quantity, and the specific observance for which the food is being donated.   Prisoner store food items are not permitted for prisoner religious observances.

3.  If the Warden approves the request, s/he forwards the request to the CFA Special Activities Coordinator.

4.  The CFA Special Activities Coordinator approves or denies the request and notifies the Warden.   If approved, the food shall go through custody and security protocol before it is allowed into the facility.

Note: The MDOC will not cook or store any donated food.   Food for religious observances is meant to be symbolic and not a regular meal or multi-course feeding.   Excess food at the end of the service shall be discarded by MDOC staff or removed from the facility by the group that donated the food.

WW.  Except in SAI, prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the CFA Special Activities Coordinator and set forth in the Handbook of Religious Groups.   A prisoner or group of prisoners who wants to observe a religious fast or feast that has not already been approved by the CFA Special Activities Coordinator must submit a written request to do so to the Warden or designee, which shall include information regarding the religion's beliefs and practices.   The Warden or designee shall refer the request and supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command for approval.   The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. Approval shall be granted only if the fast or feast is necessary to the practice of a bona fide religion and observance of the fast or feast would not pose a threat to the order and security of the facility. The CFA Special Activities Coordinator shall ensure ADDs and Wardens are notified of newly approved religious fasts or feasts.

XX.  Special religious meals and food items shall be provided to prisoners only as set forth in this section. This does not apply to food items that may be sold in the prisoner store pursuant to PD 04.02.130 "Prisoner Store" or provided to prisoners as religious sacraments.

CLERGY AND RELIGIOUS VOLUNTEERS

YY.  All prisoners shall have access to members of the clergy as set forth in this policy, including clergy for a religious group which has not been granted recognition by the Department.  For purposes of this policy, "clergy" is defined as a leader of a religious organization or entity such as a church, mosque or synagogue, or a person who has been granted clergy status by a recognized religion.  It does not include anyone who is self-ordained or designated as clergy by a prisoner.

ZZ.  Clergy shall be permitted to respond to the religious and spiritual needs of a prisoner who requests assistance, consistent with Department policies and procedures. Clergy may keep pastoral confidences intact except when withheld information would endanger the safety, security and good order of the facility or the community, including the health and safety of members of the public, staff, or prisoners.

AAA.  Prisoners shall be allowed visits from clergy and outreach volunteers as set forth in PD 05.03.140 "Prisoner Visiting."   However, SAI prisoners shall be allowed visits only as set forth in PD 05.01.142 "Special Alternative Incarceration Program." Clergy may bring into the visiting room or area a copy of

| DOCUMENT TYPE POLICY DIRECTIVE | EFFECTIVE DATE 10/15/2018 | NUMBER 05.03.150 | PAGE 8 OF 9 |
|---|---|---|---|

their religious writings (e.g., Bible, Qur'an, Koran, Rabbi's Manual, Prayer Book, and Service Book) for their use during the visit.   The religious writings shall be subject to search.

BBB.    The Warden may permit a qualified religious volunteer to conduct group religious services and activities for religious groups recognized by the Department. Clergy (e.g., Priest, Rabbi, Imam, Reverend) serving as religious volunteers are required to have an endorsement from their religious authority and be approved to provide volunteer services pursuant to PD 03.02.105 "Volunteer Services and Programs." Religious volunteers are subject to the same restrictions on contact with individual prisoners as other volunteers, except that religious volunteers who are members of the clergy may visit, correspond, or otherwise communicate with individual prisoners for religious counseling if approved by the Warden.

CCC.    Clergy may bring up to two ounces of wine into a facility for their liturgical use.  Prisoners are not allowed to consume this wine.

DDD.    Liturgical apparel may be worn by clergy during religious services and activities and stored at the facility in conformance with procedures for maintaining order, security and safety as directed by the Warden.

EEE.    With the exception of the Detroit Reentry Center (DRC), prisoners shall have access to an Institutional Chaplain. Institutional Chaplains shall be duly credentialed or ordained by a recognized religious group. The Chaplain shall have access to all areas of the institution necessary to perform his/her pastoral responsibilities.   The Chaplain shall function as coordinator of the institution's religious program and be available to respond to the religious and spiritual needs of any prisoner who requests assistance, regardless of their religious affiliation.  Chaplains shall visit segregation units at least weekly to be available to prisoners in those units who want to meet with them.   Chaplains also shall be available to meet with segregation prisoners upon request of segregation unit staff.

FFF.    Chaplains shall develop and maintain relationships with religious resources in the community.  They also shall participate in the institution's orientation program for new prisoners.   With the approval of the Warden, they also may minister to employees during times of personal crises.

GGG.    In larger institutions and in areas where several institutions are located in close proximity to each other, the Department shall attempt to fill Chaplaincy vacancies so that as many faiths as possible are represented on the Chaplaincy staff.   The CFA Special Activities Coordinator or designee shall serve on interview panels to fill such vacancies.

PRISONER MARRIAGES

HHH.    Prisoners have the right to marry in accordance with State law.   No expenses shall accrue to the State for any prisoner marriage beyond that which is necessary to comply with this policy.

III.    Prisoners may make their own arrangements with clergy or an outside person authorized to perform marriages pursuant to State law.   Institutional Chaplains shall be available to either perform prisoner marriages or assist the prisoner in making his/her own arrangements unless the prisoner is in SAI.

JJJ.    Marriage ceremonies are subject to reasonable time and place limitations as determined by the Warden. Ceremonies for prisoners in Level V or in any form of segregation shall not exceed ten minutes in length.   The ceremony also shall be limited to ten minutes in length if either of the marrying parties is subject to any form of visitor restriction imposed pursuant to PD 05.03.140 "Prisoner Visiting."

KKK.    The Warden may limit attendance at a marriage ceremony conducted within a correctional facility for legitimate custody and security reasons, including limited resources. Except for the marrying parties, no one may attend the ceremony who is the subject of a visitor restriction pursuant to PD 05.03.140 "Prisoner Visiting."   The spouse, approved witnesses, and approved wedding party members shall be permitted to have appropriate physical contact during the ceremony with the prisoner being married, even if the prisoner is subject to a visitor restriction or is housed in a security level where only non-contact visits are permitted.  No special visiting privileges shall be granted before or after the ceremony.

PROCEDURES

Heinritz Affidavit - Attachment A - Page 17 of 27

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>10/15/2018 | NUMBER<br>05.03.150 | PAGE  9  OF  9 |
|---|---|---|---|

LLL.   If necessary, to implement requirements set forth in this policy directive, Wardens shall ensure that operating procedures are developed or updated.

AUDIT ELEMENTS

MMM.   A Primary Audit Elements List has been developed and is available on the Department's Document Access System (DAS) to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

ATTACHMENTS

NNN.   This policy includes the following attachments:

   1.   Attachment A - Recognized Religious Groups Authorized to Conduct Group Religious Services/Activities

   2.   Attachment B - Recognized Religious Groups Not Authorized to Conduct Group Religious Services/Activities

APPROVED: HEW 09/23/2018

| MICHIGAN DEPARTMENT OF CORRECTIONS<br>**POLICY DIRECTIVE** | EFFECTIVE DATE<br>09/15/2015 | NUMBER<br>05.03.150 |
|---|---|---|
| SUBJECT<br>RELIGIOUS BELIEFS AND PRACTICES OF PRISONERS | SUPERSEDES<br>05.03.150 (01/22/2015) | |
| | AUTHORITY<br>MCL 551.102, 551.103, 551.103a, 551.104,<br>551.107, 551.108, 551.7, 791.203, 791.204,<br>800.282 | |
| | PAGE  1   OF   9 | |

**POLICY STATEMENT:**

Prisoners shall be permitted to exercise their religious beliefs within the constraints necessary for the safety, security and good order of the facility.

**RELATED POLICIES:**

| 03.02.105 | Volunteer Services and Programs |
|---|---|
| 04.05.120 | Segregation Standards |
| 05.03.140 | Prisoner Visiting |

**POLICY:**

<u>GENERAL INFORMATION</u>

A.   For purposes of this policy, "prisoner" includes parolees in Department correctional facilities and probationers in the Special Alternative Incarceration Program (SAI).

B    Religious freedom is a constitutionally guaranteed right.  All recognized religions enjoy equal status and protection, subject to those limitations necessary to maintain the safety, good order and security of the facility, including the health and safety of prisoners and staff.

C.   No employee, agent of the Department, or other prisoner shall proselytize, nor permit others to proselytize, any prisoner without his/her consent.   No prisoner shall be discriminated against, or given preferential treatment, because of his/her religious beliefs or practices.

D.   Except in SAI, prisoners may maintain head and facial hair in accordance with their religious beliefs provided that reasonable hygiene is maintained and prisoner identification cards are kept current. Prisoners in SAI are required to maintain head and facial hair as set forth in PD 05.01.142 "Special Alternative Incarceration Program."

E.   Institutional Chaplains shall not be assigned duties that are primarily the responsibility of custodial staff. Religious volunteers also shall not be used to perform custodial or any other duties or duties that are the responsibility of staff.

F.   A prisoner may contribute funds to external religious organizations in accordance with PD 04.02.105 "Prisoner Funds."

<u>CHAPLAINCY ADVISORY COUNCIL</u>

G.   A Chaplaincy Advisory Council (CAC) comprised of representatives of various faiths and denominations, serves in an advisory capacity to the Department regarding religious policy and programming. The CFA Special Activities Coordinator shall be a member of the CAC and ensure that all major religions are represented.   Organization and membership of the CAC is governed by its constitution and bylaws.  The CAC constitution and bylaws shall not conflict with any Department policy or procedure and are subject to the approval of the Deputy Director.

H.   Upon request of the Deputy Director or designee, the CAC or its individual members may assist in evaluating religious programming and the screening and selection of institutional Chaplains.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 09/15/2015 | 05.03.150 | PAGE  2  OF  9 |

## DEPARTMENT RECOGNIZED RELIGIOUS GROUPS

I.    The Department recognizes religious groups for the purpose of identifying those groups authorized to conduct group religious services and attend group religious activities and for identifying authorized personal religious property prisoners belonging to the religious group may possess, subject to PD 04.07.112 "Prisoner Personal Property" and PD 05.01.142 "Special Alternative Incarceration Program." Attachment A identifies those religious groups recognized by the Department that are authorized to conduct group religious services and attend group religious activities as well as all authorized personal religious property members of that religious group may possess.  Attachment B identifies those religious groups recognized by the Department that are <u>not</u> authorized to conduct group religious services or attend group religious services but whose members are authorized to possess personal religious property. Prisoners are allowed to possess personal religious reading material of any religion as set forth in Paragraph II.

J.    The CFA Special Activities Coordinator shall maintain the Handbook of Religious Groups, which sets forth general information on the beliefs, practices, and customs of each recognized religious group. The Handbook also shall identify religious holy days, including any fasts or feasts that prisoners shall be permitted to observe consistent with Department policy.  This includes but is not limited to Ramadan fasts, Seders, and Eid-ul-Fitr and Eid-ul-Adha observances.  The CFA Special Activities Coordinator shall ensure that the Handbook is available on the Department's Document Access System (DAS).

K.    A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden or designee. The request shall include information regarding the group's religious beliefs and practices. The Warden shall ensure all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command.  The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed.  The CFA Special Activities Coordinator shall forward his/her recommendation, and that of the CAC if applicable, to the Deputy Director for a final determination.

L.    The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition, and if so, whether group religious services and activities and personal religious property will be allowed.  The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC.  The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security threat. The decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group.   All Assistant Deputy Directors (ADD) and Wardens shall be advised of the final decision.

## SOLICITATION/RECEIPT OF FUNDS

M.    Recognized religious groups, and prisoners acting on behalf of the group, may solicit and collect funds only as specifically authorized by this policy.  Religious groups that are <u>not</u> recognized by the Department cannot solicit or collect funds from any source.

N.    Recognized religious groups and their members are prohibited from charging or receiving donations or anything else of value from any prisoner, including prisoners who are members of the group or who wish to attend group services or activities.   Recognized religious groups are permitted to receive funds from the Prisoner Benefit Fund (PBF), in accordance with PD 04.02.110 "Prisoner Benefit Fund." Funds received from the PBF may be spent only as follows, subject to the Warden's approval:

1.    For special entertainment available to all general population prisoners in the facility (e.g., guest speaker, musical group).

2.    To sponsor competitive events available to all general population prisoners in the facility.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 09/15/2015 | 05.03.150 | PAGE  3  OF  9 |

3.  To contribute to a charitable organization.

4.  To purchase items benefiting the religious group.

5.  Other expenditures as approved by the Warden. However, under no circumstances shall funds be used to purchase personal property for prisoners or any computer equipment. Funds received by the religious group also shall not be used for banquets or similar meals.

O.  All funds collected by a recognized religious group shall be deposited directly into an institutional account created for the group. The account shall be created and maintained as a sub-account of the PBF. The institution's Administrative Officer shall ensure the proper handling of cash, sales records and receipts, and the reconciling and depositing of all funds. Funds remaining in the account of a religious group which has not had a member for at least one year shall be placed in the PBF and the account closed. The Department and its employees are not responsible for the unpaid bills of a recognized religious group.

RELIGIOUS SERVICES AND ACTIVITIES

P.  A prisoner shall not be restricted from joining and attending the services and activities of a religious group on the basis of race, color, or nationality.

Q.  Information on group religious services and activities available within an institution shall be made available to prisoners during orientation. Prisoners also shall be kept informed about opportunities to participate in offered religious services and activities on a continuing basis. This shall include posting a schedule of all offered religious services and activities in a location where it can be seen by prisoners. Prisoner attendance at group religious services and activities shall be scheduled by the Chaplain in conjunction with the appropriate Deputy Warden or designee. Except in SAI, attendance also shall be in accordance with PD 04.04.130 "Prisoner Movement within an Institution."

R.  Each prisoner shall be allowed to identify his/her religious affiliation, but will not be recognized as belonging to, or allowed to participate in the services or activities of, more than one religious group at any given time. Prisoners may change their religious affiliation no more often than twice a year and must provide written notice of the change to the institutional Chaplain. The Declaration of Religious Preference form (CSJ-177) shall be used to identify and change religious affiliation. The form shall not be retained in any of the prisoner's commitment files, unless requested in writing by the prisoner. Except in SAI, the Warden shall ensure that the prisoner's religious affiliation as identified on the Declaration of Religious Preference form is entered on the Department's computerized database within five business days after receipt of the form by the Chaplain.

S.  A Warden may prohibit a religious practice only if it is a threat to the safety, security, and good order of the facility. If a religious practice is prohibited, the Warden shall report it to the CFA Special Activities Coordinator within one business day.

T.  Prisoners shall not serve as clergy or leaders of religious groups even if qualified to do so, except as set forth in Paragraph FF. Prisoners who hold ecclesiastical credentials shall not have those credentials recognized within an institution.

U.  Special provisions for the observance of religious holidays or holy days shall be permitted only as authorized and specifically provided for by Department policy.

GROUP SERVICES/ACTIVITIES

V.  Group religious services shall be offered at all institutions for prisoners belonging to a recognized religious group. Except as set forth in Attachment A, each group shall be allowed a weekly religious service if resources permit. However, a service is not required to be conducted if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group. If resources such as time or space are limited, the following shall be followed in allotting available resources:

1.  Each major faith group within the same custody level of an institution may be required to hold

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>09/15/2015 | NUMBER<br>05.03.150 | PAGE 4 OF 9 |
|---|---|---|---|

joint services (e.g., there may be one non-sectarian service for Christian prisoners, one for Islamic prisoners, one for Jewish prisoners, and one for Native American prisoners).

2. The Warden or designee may establish a maximum number of hours which will be available per week or month for group religious services and activities and divide those hours among recognized religious groups at his/her institution. While preference may be given to those recognized religious groups with the larger numbers, all recognized religious groups shall be allowed at least some opportunity for group services.

W. There shall be at least one suitable area designated for conducting group religious services and activities within each institution. Staff shall have access to any area where group religious services or activities are being conducted. However, staff shall be as respectful of religious practices as possible, consistent with necessary custody and security controls. These areas shall be subject to search, which shall be conducted in the presence of the Chaplain, if possible. However, searches shall not be delayed if a Chaplain is not readily available. Care should be taken so that items which have been consecrated or are considered sacred are treated with respect and appropriate care.

X. A prisoner shall not possess or have control over candles, candle holders, lighters, or any incendiary device used during group religious services or activities. These items must remain under control of staff or volunteer clergy at all times while in use. In addition, there must be in-room staff supervision of group religious services or activities whenever a candle is used.

Y. In Level IV and V, group religious services and activities shall have continuous in-room staff supervision at all times. Subject to Paragraph X, group religious services and activities in Level I and Level II shall have at least random in-room staff supervision. However, every effort shall be made to have continuous in-room staff supervision when a religious service is being led by a prisoner assistant pursuant to Paragraph FF. In all other cases, the Warden shall determine the need for in-room staff supervision for group services and activities. However, staff must be readily available in the area when in-room staff supervision is not required. Staff providing in-room supervision shall remain in the room where the service or activity is being conducted during the entire service or activity. To ensure that prisoners are engaging only in conduct appropriate to the practice of the religion, staff providing in-room supervision shall listen to and watch those attending the service or activity. This supervision shall be as unobtrusive as possible, consistent with custody and security controls.

Z. When attending group religious services or activities, prisoners shall engage only in conduct appropriate to the practice of the religion. Prisoners shall not guard or control, or position themselves so as to appear to be guarding or controlling, the entrance to or exit from the religious service or activity. Militaristic type behavior (e.g., saluting each other; marching) shall not be permitted. Failure to comply with these requirements may result in the prisoner being required to leave the area or result in termination of the service or activity.

AA. Prisoners may be released from work or school assignments to attend group religious services and approved holy day observances. However, prisoners shall not be released to attend other religious activities. A prisoner must submit a written request to the Warden or designee to be released from his/her work or school assignment at least 15 calendar days prior to the service or holy day observance. Prisoners released from a work or school assignment to attend group religious services or holy day observances will not be paid for their absence from the assignment. Prisoners shall not return to the assignment at the conclusion of the group religious service or holy day observance unless specifically requested to do so by the work or school supervisor.

BB. Religious services and activities should be scheduled when the majority of prisoners have leisure time (e.g., evening and weekend hours). If resources permit, additional services and activities may be scheduled to accommodate those prisoners who are normally on a work or school assignment when other prisoners have leisure time. Chaplains shall be available at the facility when the majority of services and activities are scheduled.

CC. The Warden or designee may reschedule any group religious service or activity at his/her facility, or restrict the size of the group attending religious services or activities, for custody and security reasons.

DD. Group religious services and activities shall be offered only for religious groups recognized by the

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>09/15/2015 | NUMBER<br>05.03.150 | PAGE **5** OF **9** |
|---|---|---|---|

Department. Prisoners shall be permitted to attend only the group religious services and activities offered for the religion s/he has designated in writing as his/her religious affiliation. Group religious services and activities for prisoners in segregation shall be offered only as set forth in PD 04.05.120 "Segregation Standards."

EE.    The Warden may suspend religious group services and activities if holding the service or activity would constitute a threat to the safety, security and good order of the institution.   If a Warden suspends group religious services or activities, it shall be reported through the appropriate chain of command to the CFA Special Activities Coordinator.   Group religious services and activities may not be suspended for more than one week without authorization from the appropriate ADD and notification to the CFA Special Activities Coordinator.

FF.    The institutional Chaplain may approve a prisoner to temporarily assist in leading a group religious service only if the Chaplain is not theologically qualified or ecclesiastically permitted to lead the service and there are no qualified outside volunteers nearby who are available to lead the service.   In such cases, in-room staff supervision shall be provided as set forth in Paragraph Y.   Prisoners acting as temporary assistants to the Chaplain shall not be recognized by courtesy titles (e.g., Minister, Priest, Reverend, Imam, Padre, Father, Sister, Brother, Grand Sheik) in the institution.   They also shall not represent themselves to members of the public, staff or other prisoners with such titles.

GG.    Except in SAI, institutional Chaplains shall maintain records of attendance at group religious services but shall not include those records in any of the prisoner's commitment files.

RELIGIOUS MATERIALS

HH.    Prisoners are allowed to receive religious reading material through the mail and from the institutional Chaplain, subject to PD 04.07.112 "Prisoner Personal Property," PD 05.03.118 "Prisoner Mail," and PD 05.01.142 "Special Alternative Incarceration Program." This includes reading materials about a religious group not granted recognition by the Department. Institutional Chaplains shall ensure that religious reading material from a variety of religious groups is available for prisoner use.

II.    In addition to religious reading material, prisoners are allowed to possess personal religious property which is necessary to the practice of the prisoner's religion unless an item presents a threat to the safety, security, and good order of the facility, as determined by the Deputy Director and subject to PD 04.07.112 "Prisoner Personal Property" and PD 05.01.142 "Special Alternative Incarceration Program."   Attachment A and B identifies personal religious property authorized by the Deputy Director for prisoners who are members of a religious group recognized by the Department.   Only religious property identified on the attachments shall be permitted.   The attachments also identify restrictions on the possession and use of such property.

JJ.    Subject to PD 05.01.142 "Special Alternative Incarceration Program," all prisoners may possess personal religious property that has not already been authorized by the Deputy Director only with approval of the Deputy Director.   Such requests from prisoners must be submitted in writing to the Warden or designee and include a description of the religious item along with an explanation of its significance to the prisoner's designated religion.   The Warden or designee shall forward the request and any supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command.   The CFA Special Activities Coordinator shall present the material to the CAC for review as needed prior to submission to the Deputy Director.

KK.    The Deputy Director shall make the final decision as to whether the religious item will be approved based on whether it is necessary to the practice of the prisoner's religion and whether possession of the item would pose a threat to the custody and security of the facility.   The decision whether the item is necessary to the practice of the prisoner's designated religion shall be based on any recommendation received from the CAC.   The Warden or designee shall be advised of the final decision and shall notify the prisoner.

LL.    If a prisoner changes his/her designated religion, any religious items other than reading material in his/her possession which are not necessary to the practice of the prisoner's newly designated religion shall be considered contraband. Contraband shall be disposed of as set forth in PD 04.07.112 "Prisoner Personal Property."

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>09/15/2015 | NUMBER<br>05.03.150 | PAGE  6  OF  9 |
|---|---|---|---|

MM.   The CFA Special Activities Coordinator shall authorize vendors from which prisoners may purchase religious reading material and other approved religious materials for each religious group recognized by the Department.   Prisoners may purchase approved personal religious property other than reading material only through the institution from authorized vendors in accordance with PD 04.07.112 "Prisoner Personal Property."   Religious reading material may be purchased as set forth in PD 05.03.118 "Prisoner Mail."   Religious property, including reading material, is subject to the retail value limit set forth in PD 04.07.112 "Prisoner Personal Property."

RELIGIOUS MENUS/MEALS

NN.   The regular diet menu shall be posted a minimum of one week in advance in all facilities at which meals are provided to prisoners to permit observance of any religious dietary restrictions.   Prisoners shall be permitted to abstain from any foods that violate their religious tenets.   Non-meat entrees shall be available as set forth in PD 04.07.100 "Offender Meals."

OO.   The Department offers a vegan menu to meet the religious dietary needs of prisoners at the following facilities: Alger Correctional Facility, Baraga Correctional Facility, Carson City Correctional Facility, Central Michigan Correctional Facility, Chippewa Correctional Facility, Earnest C. Brooks Correctional Facility, Ionia Correctional Facility, Kinross Correctional Facility, Lakeland Correctional Facility, Macomb Correctional Facility, Muskegon Correctional Facility, Newberry Correctional Facility, Oaks Correctional Facility, Parnall Correctional Facility, St. Louis Correctional Facility, Women's Huron Valley Correctional Facility.   The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner.   All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals."   The Deputy Director or designee shall determine at which facilities religious meals will be offered.

PP.   A prisoner may eat from a Vegan menu only with approval of the CFA Special Activities Coordinator. Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion, including the prisoner's sincerely held religious beliefs.   To request approval, the prisoner must submit a written request to the Warden or designee, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden or designee of the decision.   The Warden shall ensure that the prisoner is notified.   A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

QQ.   A prisoner approved to eat from a religious menu shall be provided appropriate meals within a reasonable time after the approval. The prisoner shall be transferred to an institution offering the meals, if necessary. Once the meals are provided, the prisoner shall not be allowed to eat from the regular menu.   The prisoner shall continue to be provided meals from the religious menu except as set forth in Paragraphs RR and SS.

RR.   A prisoner approved to eat from a religious menu must notify the Warden in writing if s/he no longer wants to eat from that menu.   The approval shall be rescinded upon receipt of the request.

SS.   A prisoner approved to eat meals prepared from the religious menu who is found at an administrative hearing conducted pursuant to Administrative Rule 791.3310 to have either possessed or consumed food that violates a tenet of his/her designated religion shall be referred to the institutional Chaplain to discuss the matter and be counseled on how to conform his/her conduct to religious dietary requirements. The Chaplain shall document the counseling in writing.   If, subsequent to this counseling, the prisoner is found at an administrative hearing to have again possessed or consumed food that violates a tenet of his/her designated religion, the prisoner's approval to eat meals prepared from the Vegan menu shall be rescinded.   The prisoner may apply for reinstatement to eat from the Vegan menu no sooner than 60 calendar days after the approval is rescinded the first time and no sooner than one year after approval is rescinded a second time.   A prisoner who has approval rescinded three or more times must appeal to the CFA Deputy Director for reinstatement to eat from the Vegan menu.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 09/15/2015 | 05.03.150 | PAGE 7 OF 9 |

TT.    Pursuant to court order, an annual Passover Seder shall only be conducted at the Parnall Correctional Facility (SMT) under the direction of the CFA Special Activities Coordinator. Only prisoners who designated Judaism as their religious affiliation shall be permitted to attend the Seder. The Warden shall determine necessary custody supervision, consistent with requirements set forth in this policy.

UU.    Muslim prisoners need not participate in Ramadan to participate in EID observances.

VV.    The following steps shall be completed when any outside group wants to donate food for religious observances:

    1.    The group submits a written request to the Warden within 30 calendar days of the religious observance.

    2.    The group identifies the food, quantity, and the specific observance for which the food is being donated.   Prisoner store food items are not permitted for prisoner religious observances.

    3.    If the Warden approves the request, s/he forwards the request to the CFA Special Activities Coordinator.

    4.    The CFA Special Activities Coordinator approves or denies the request and notifies the Warden.   If approved, the food shall go through custody and security protocol before it is allowed into the facility.

Note: The MDOC will not cook or store any donated food.   Food for religious observances is meant to be symbolic and not a regular meal or multi-course feeding.  Excess food at the end of the service shall be discarded by MDOC staff or removed from the facility by the group that donated the food.

WW.    Except in SAI, prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the CFA Special Activities Coordinator and set forth in the Handbook of Religious Groups.   A prisoner or group of prisoners who wants to observe a religious fast or feast that has not already been approved by the CFA Special Activities Coordinator must submit a written request to do so to the Warden or designee, which shall include information regarding the religion's beliefs and practices.  The Warden or designee shall refer the request and supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command for approval.  The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. Approval shall be granted only if the fast or feast is necessary to the practice of a bona fide religion and observance of the fast or feast would not pose a threat to the order and security of the facility. The CFA Special Activities Coordinator shall ensure ADDs and Wardens are notified of newly approved religious fasts or feasts.

XX.    Special religious meals and food items shall be provided to prisoners only as set forth in this section. This does not apply to food items that may be sold in the prisoner store pursuant to PD 04.02.130 "Prisoner Store" or provided to prisoners as religious sacraments.

<u>CLERGY AND RELIGIOUS VOLUNTEERS</u>

YY.    All prisoners shall have access to members of the clergy as set forth in this policy, including clergy for a religious group which has not been granted recognition by the Department.  For purposes of this policy, "clergy" is defined as a leader of a religious organization or entity such as a church, mosque or synagogue, or a person who has been granted clergy status by a recognized religion.  It does not include anyone who is self-ordained or designated as clergy by a prisoner.

ZZ.    Clergy shall be permitted to respond to the religious and spiritual needs of a prisoner who requests assistance, consistent with Department policies and procedures. Clergy may keep pastoral confidences intact except when withheld information would endanger the safety, security and good order of the facility or the community, including the health and safety of members of the public, staff, or prisoners.

AAA.    Prisoners shall be allowed visits from clergy and outreach volunteers as set forth in PD 05.03.140 "Prisoner Visiting."   However, SAI prisoners shall be allowed visits only as set forth in PD 05.01.142

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>09/15/2015 | NUMBER<br>05.03.150 | PAGE  8  OF  9 |
|---|---|---|---|

"Special Alternative Incarceration Program." Clergy may bring into the visiting room or area a copy of their religious writings (e.g., Bible, Qur'an, Koran, Rabbi's Manual, Prayer Book, and Service Book) for their use during the visit.   The religious writings shall be subject to search.

BBB.    The Warden may permit a qualified religious volunteer to conduct group religious services and activities for religious groups recognized by the Department. Clergy (e.g., Priest, Rabbi, Imam, Reverend) serving as religious volunteers are required to have ecclesiastical endorsement from their religious authority, and be approved to provide volunteer services pursuant to PD 03.02.105 "Volunteer Services and Programs." Religious volunteers are subject to the same restrictions on contact with individual prisoners as other volunteers, except that religious volunteers who are members of the clergy may visit, correspond, or otherwise communicate with individual prisoners for religious counseling if approved by the Warden.

CCC.    Clergy may bring up to two ounces of wine into a facility for their liturgical use.  Prisoners are not allowed to consume this wine.

DDD.    Liturgical apparel may be worn by clergy during religious services and activities and stored at the facility in conformance with procedures for maintaining order, security and safety as directed by the Warden.

EEE.    With the exception of the Detroit Reentry Center (DRC), prisoners shall have access to an Institutional Chaplain. Institutional Chaplains shall be duly credentialed or ordained by a recognized religious group. The Chaplain shall have access to all areas of the institution necessary to perform his/her pastoral responsibilities.  The Chaplain shall function as coordinator of the institution's religious program and be available to respond to the religious and spiritual needs of any prisoner who requests assistance, regardless of their religious affiliation.  Chaplains shall visit segregation units at least weekly to be available to prisoners in those units who want to meet with them.  Chaplains also shall be available to meet with segregation prisoners upon request of segregation unit staff.

FFF.    Chaplains shall develop and maintain relationships with religious resources in the community.  They also shall participate in the institution's orientation program for new prisoners.  With the approval of the Warden, they also may minister to employees during times of personal crises.

GGG.    In larger institutions and in areas where several institutions are located in close proximity to each other, the Department shall attempt to fill Chaplaincy vacancies so that as many faiths as possible are represented on the Chaplaincy staff.  The CFA Special Activities Coordinator or designee shall serve on interview panels to fill such vacancies.

PRISONER MARRIAGES

HHH.    Prisoners have the right to marry in accordance with State law.   No expenses shall accrue to the State for any prisoner marriage beyond that which is necessary to comply with this policy.

III.    Prisoners may make their own arrangements with clergy or an outside person authorized to perform marriages pursuant to State law.  Institutional Chaplains shall be available to either perform prisoner marriages or assist the prisoner in making his/her own arrangements unless the prisoner is in SAI.

JJJ.    Marriage ceremonies are subject to reasonable time and place limitations as determined by the Warden. Ceremonies for prisoners in Level V or in any form of segregation shall not exceed ten minutes in length.   The ceremony also shall be limited to ten minutes in length if either of the marrying parties is subject to any form of visitor restriction imposed pursuant to PD 05.03.140 "Prisoner Visiting."

KKK.    The Warden may limit attendance at a marriage ceremony conducted within a correctional facility for legitimate custody and security reasons, including limited resources. Except for the marrying parties, no one may attend the ceremony who is the subject of a visitor restriction pursuant to PD 05.03.140 "Prisoner Visiting."   The spouse, approved witnesses, and approved wedding party members shall be permitted to have appropriate physical contact during the ceremony with the prisoner being married, even if the prisoner is subject to a visitor restriction or is housed in a security level where only non-contact visits are permitted.  No special visiting privileges shall be granted before or after the ceremony.

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>09/15/2015 | NUMBER<br>05.03.150 | PAGE 9 OF 9 |
|---|---|---|---|

PROCEDURES

LLL.   Wardens shall ensure that operating procedures are developed as necessary to implement requirements set forth in this policy directive within 60 calendar days after the effective date.

AUDIT ELEMENTS

MMM.   A Primary Audit Elements List has been developed and is available on the Department's Document Access System to assist with self-audit of this policy pursuant to PD 01.05.100 "Self Audit of Policies and Procedures."

ATTACHMENTS

NNN.   This policy includes the following attachments:

    1.   Attachment A - Recognized Religious Groups Authorized to Conduct Group Religious Services/Activities

    2.   Attachment B - Recognized Religious Groups Not Authorized to Conduct Group Religious Services/Activities

APPROVED: HEW 08/03/2015

CFA Memo - 2/11/15 - Holy Day List

Religious Groups Handbook - 05/01/15

CFA Memo - 7/15/15 - Food Items at Religious Observances

Vegan Religious Meal Manual - 4/21/17